[Cite as *Perrin v. Cincinnati Ins. Co.*, 2020-Ohio-1405.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JULIETA L. PERRIN | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28502 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-2090 |
| | : | |
| CINCINNATI INSURANCE | : | (Civil Appeal from |
| COMPANY, et al. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of April, 2020.

. . . . . . . . . . .

RYAN J. MELEWSKI, Atty. Reg. No. 0084956 and JEFFREY A. PALLANTE, Atty. Reg.
No. 0075005, 165 East Livingston Avenue, Columbus, Ohio 43215
        Attorneys for Plaintiff-Appellant

BRIAN R. McHENRY, Atty. Reg. No. 0065876 and GERALD V. SOUTHARD, Atty. Reg.
No. 0095264, 130 West Second Street, Suite 1850, Dayton, Ohio 45402
        Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Plaintiff-appellant, Julieta L. Perrin, appeals from a series of interlocutory decisions that were merged into a final judgment on July 23, 2019. Specifically, Perrin challenges the trial court's decisions of June 6, 2018; August 21, 2018; March 12, 2019; and April 19, 2019, all of which related to one or more of Perrin's causes of action against Defendant-appellee, Cincinnati Insurance Company ("Cincinnati Insurance").[1] In the first of her two assignments of error, Perrin argues that the court erred in its decisions of June 6, 2018; August 21, 2018; and March 12, 2019, by restricting her rights to discovery under Civ.R. 30 and 34, and in the second of her two assignments of error, Perrin argues that the court erred in its decision of April 19, 2019, by sustaining Cincinnati Insurance's motion for summary judgment. We find that the court did not err, and its judgment is therefore affirmed.

### I. Facts and Procedural History

**{¶ 2}** On May 4, 2015, Perrin was involved in an automobile accident while driving along East Dorothy Lane in Kettering. She alleges that "her vehicle was * * * struck by a vehicle [being negligently] operated" by Anne Kelsey. Appellant's Brief 1. At the time, Kelsey and Perrin alike were insured under policies issued by Cincinnati Insurance.[2]

---

[1] In August 2017, Cincinnati Insurance moved for judgment on the pleadings. The trial entered a decision on September 19, 2017, in which it sustained the motion in part and dismissed two of Perrin's four causes of action against the company. In her notice of appeal, Perrin indicated that she also sought to challenge this decision, yet in her brief, she offers no corresponding argument. We conclude, then, that she has abandoned her challenge to this decision.

[2] Kelsey was driving a vehicle owned by her mother, Susan Kelsey. Complaint ¶ 8; Motion of Anne and Susan Kelsey for Summary Judgment 2. In its answer to the complaint, Cincinnati Insurance denied that it insured either Perrin or Kelsey, claiming that it lacked "knowledge or information sufficient to form a belief as to the truth" of whether Perrin or Kelsey were among its policyholders. Answer of Defendants, the Cincinnati Insurance Company, the Cincinnati Indemnity Company and the Cincinnati

{¶ 3} Perrin engaged counsel to represent her and pursued two claims arising from the accident: a first-party claim under her own policy for payment of her medical expenses (the "Medpay Claim"); and a third-party liability claim (the "Liability Claim") against Kelsey's policy. She executed an assignment with respect to the former claim on May 5, 2015, in which she assigned "her right to [Medpay] benefits to Pike Chiropractic." Decision Sustaining Motion for Summary Judgment 6, Apr. 19, 2019; Plaintiff's Memorandum in Opposition to Cincinnati Insurance's Motion for Summary Judgment 15, Mar. 21, 2019. Perrin did not have written permission from Cincinnati Insurance to execute the assignment, contrary to the terms of her insurance policy. *See* Complaint, Ex. 1; Plaintiff's Second Motion to Compel, Ex. 2.

{¶ 4} Perrin's counsel requested that Cincinnati Insurance open the Medpay Claim in a letter received by the company on or about May 18, 2015.[3] In response, Cincinnati Insurance requested documentation or authorization to obtain documentation, such as the relevant billing statements and medical records, but neither Perrin herself nor her counsel complied with the request. Decision Sustaining Motion for Summary Judgment 6. The company did, however, receive a request for payment from Pike Chiropractic on September 14, 2015, accompanied by copies of a billing statement and medical records, followed by a second request, accompanied by the same documents, on September 23, 2015. Plaintiff's Memorandum in Opposition to Cincinnati Insurance's Motion for Summary Judgment 13. Cincinnati Insurance did not issue a payment in response to

---

Casualty Company ¶ 1(b); Complaint ¶ 14-15; *see also* Civ.R. 8(B).

[3] The letter was dated May 8, 2015. Decision Sustaining Motion for Summary Judgment 2.

the submissions from Pike Chiropractic.

{¶ 5} Perrin filed a complaint on May 1, 2017, against Anne Kelsey; Susan Kelsey, who owned the vehicle that Anne Kelsey was driving; Cincinnati Insurance Company; Cincinnati Indemnity Company; and Cincinnati Casualty Company. The complaint set forth a cause of action for negligence against Anne Kelsey; a cause of action for negligent entrustment against Susan Kelsey; and causes of action for breach of contract, bad faith, breach of fiduciary duty, and violation of R.C. Chapter 3904 and Ohio Adm.Code Chapter 3901 against Cincinnati Insurance and its associated co-defendants. Cincinnati Insurance moved for judgment on the pleadings on August 1, 2017, and on September 19, 2017, the trial court sustained the motion in part, resulting in the dismissal of two of Perrin's four causes of action against the company.

{¶ 6} On July 31, 2018, Cincinnati Insurance moved for summary judgment on Perrin's remaining causes of action. After a considerable delay occasioned by a series of discovery disputes and other procedural matters, the trial court entered a decision on April 19, 2019, in which it sustained the motion.

{¶ 7} Perrin then reached a settlement agreement with Anne and Susan Kelsey, and the trial court accordingly entered an order on July 23, 2019, dismissing Perrin's causes of action against the Kelseys with prejudice, which was effectively the final judgment in this case. On August 20, 2019, Perrin timely filed her notice of appeal.

## II. Analysis

{¶ 8} For her first assignment of error, Perrin contends that:

THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTIONS

TO COMPEL ON JUNE 6, 2018 AND MARCH 12, 2019 AND LIMITING

THE PLAINTIFF'S SCOPE OF DEPOSITIONS.

{¶ 9} Perrin challenges three rulings issued by the trial court regarding discovery. On appeal, a trial court's discovery orders are generally "reviewed under [the] abuse-of-discretion standard." (Citation omitted.) *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13. A trial court abuses its discretion by exercising its authority unreasonably, unconscionably or arbitrarily. *See Stratacache, Inc. v. Wenzel*, 2d Dist. Montgomery No. 28060, 2019-Ohio-3523, ¶ 16.

{¶ 10} Of the three discovery rulings Perrin challenges, the first is the trial court's ruling on her motion to compel of February 16, 2018, in which she sought an order directing Cincinnati Insurance to produce its file on her Liability Claim. The court overruled the motion in its decision of June 6, 2018, without ordering Cincinnati Insurance to produce any potentially responsive documents for an inspection in camera. Though it presumably concurred more or less with the arguments in opposition made by Cincinnati Insurance, the court offered no express rationale for its ruling.[4] *See* Decision, Entry and Order Overruling Plaintiff's Motion to Compel 1.

{¶ 11} In her motion, Perrin insisted that Cincinnati Insurance "should be compelled to produce its liability claims [sic] file" because the company had "used its

---

[4] The court and the parties, for that matter, appear to have engaged in significant discussions about the motion through an exchange of emails. *See* Cincinnati Insurance's Memorandum in Opposition to Plaintiff's Motion to Compel 1-2; Plaintiff's Reply in Support of Motion to Compel 1. No transcript of the emails has been entered into the record, and although Cincinnati Insurance included what it claimed were excerpts from one or more emails sent by the court on October 24, 2017, the excerpts cannot be checked for accuracy in the absence of a transcript. Cincinnati Insurance's Memorandum in Opposition to Plaintiff's Motion to Compel 2. Even so, the record suffices to demonstrate that the court had a reasonable basis for overruling Perrin's motion.

position of trust," relative to her Medpay Claim, "to acquire information about [her] that [it] shared with [its] liability adjuster"; she also nominally requested, in the alternative, that the trial court order Cincinnati Insurance to produce its file on her Liability Claim for an in camera inspection.[5]   *See* Plaintiff's Motion to Compel 1 and 4.   Similarly, Perrin argues in her brief that because Cincinnati Insurance's "liability file related to the 'subject matter' of [her] lawsuit[,] including [her] claim of bad-faith [sic] as well as punitive damages," the file "was discoverable unless it contained 'privileged' material."   Appellant's Brief 11.   She adds that because this court has "held that a trial court commits reversible error by ordering the disclosure of a claims [sic] file without conducting an in-camera [sic] review," we should also hold that "a trial court commits reversible error by failing to conduct an in-camera [sic] review of a claims [sic] file before [determining that the file is] not discoverable."   *Id.*, citing *Unklesbay v. Fenwick,* 167 Ohio App.3d 408, 2006-Ohio-2630, 855 N.E.2d 516 (2d Dist.).

{¶ 12} Perrin's fundamental premise is that Cincinnati Insurance's medical payments adjuster acted improperly by sharing information, which the adjuster had received for purposes of Perrin's Medpay Claim, with the company's liability adjuster "to help [the company] defend [against Perrin's concurrent] [L]iability [C]laim."   *Id.*   Perrin cites no authority establishing that such information sharing would necessarily have been improper, though in Counts 5 and 6 of her complaint, she alleged that Cincinnati Insurance thereby violated R.C. Chapter 3904 and Ohio Adm.Code Chapter 3901, and

---

[5] Perrin presented her request for alternative relief, such as it was, only by implication. She captioned her motion "Plaintiff's Motion to Compel or in the Alternative Motion for an In-camera [sic] Inspection of Cincinnati Insurance Company's Liability Claims [sic] File," but she made no reference to the request in the text of the motion itself.

breached its fiduciary duty to her. *See* Complaint ¶ 49-61. In her brief, she contends that the information sharing was a breach of Cincinnati Insurance's "duty of good-faith [sic] and fair dealings [sic]," which relates to Count 4 of her complaint. *See* Appellant's Brief 11.

{¶ 13} Neither R.C. Chapter 3904, which concerns "insurance information practices," nor Ohio Adm.Code Chapter 3901, which comprises a variety of insurance-related regulations, supports the proposition that the alleged information sharing was unlawful or otherwise improper. R.C. 3904.02(A)(1)-(2) states that the "obligations [imposed by R.C.] 3904.01 to 3904.22 * * * apply to those insurance institutions, agents, or insurance support organizations" that "[c]ollect, receive, or maintain information in connection with insurance transactions [pertaining] to natural persons who are residents of this state," and to insurance institutions, agents, or insurance support organizations that "[e]ngage in insurance transactions with applicants, [individual persons], or policyholders who are residents of this state."[6] (Emphasis added.) The definition of the term "insurance transaction," however, excludes automobile insurance policies. For purposes of "sections 3904.01 to 3904.22 of the Revised Code," an "[i]nsurance transaction" is defined as

> any transaction involving life, health, or disability insurance primarily for
>
> personal, family, or household needs[,] rather than business or professional

---

[6] Mirroring the provisions of Subsection (A), Subsection (B) states that the "rights granted by [R.C.] 3904.01 to 3904.22 * * * extend to [those persons] who are residents of this state" and are "[n]atural persons who are the subject of information collected, received, or maintained in connection with insurance transactions," and to "[a]pplicants, [individual persons], or policyholders who engage in or seek to engage in insurance transactions." (Emphasis added.) R.C. 3904.02(B)(1)-(2).

needs[,] and entailing either the determination of [a person]'s eligibility for a life, health, or disability insurance coverage, benefit, or payment, or [entailing] the servicing of a life, health, or disability insurance application, policy, contract, or certificate.

(Emphasis added.)   R.C. 3904.01(M).   Sections "3904.01 to 3904.22 of the Revised Code" constitute the entirety of R.C. Chapter 3904, as it is presently codified, whereas motor vehicle insurance is regulated under R.C. Chapter 3937, which defines the term "motor vehicle insurance" as a form of "casualty insurance."   *See* R.C. 3937.01. Furthermore, although a number of regulations established by Ohio Adm.Code Chapter 3901 pertain to motor vehicle insurance, none of the regulations set forth in the chapter prohibits the type of information sharing that allegedly occurred in Perrin's case.

{¶ 14} With respect to her cause of action for breach of fiduciary duty, Perrin bore the burden to prove: "(1) the existence of a [heightened] duty [of care on the part of Cincinnati Insurance] arising from [its] fiduciary relationship [to her]; (2) a failure [on the part of Cincinnati Insurance] to observe [its] duty; and (3) an injury proximately" caused by the failure.   *See Harwood v. Pappas & Assocs., Inc.*, 8th Dist. Cuyahoga No. 84761, 2005-Ohio-2442, ¶ 26, citing *Strock v. Pressnell*, 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988).   Cincinnati Insurance did stand in a fiduciary relationship to Perrin because, "[u]nder Ohio law, * * * a fiduciary relationship exists in the context of insurance contracts." (Citation omitted.)   *Gallo v. Westfield Natl. Ins. Co.*, 8th Dist. Cuyahoga No. 91893, 2009-Ohio-1094, ¶ 15.

{¶ 15} Nevertheless, the information sharing that Perrin characterizes as improper would inevitably have been necessary for the processing of her Liability Claim.   For

example, under Part B of Perrin's policy, which set the terms for "medical payments coverage," the "limit of insurance" provision stated that "[n]o one will be entitled to receive duplicate payments for the same elements of loss under this [medical payments] coverage and [also under] Part A," which set the terms for "liability coverage," or under "any uninsured or underinsured motorists coverage provided by endorsement." Complaint, Ex. 1. For that matter, had Kelsey been insured by an insurance provider other than Cincinnati Insurance, Perrin would almost certainly have been required to document her medical expenses—and the legitimacy of those expenses—for purposes of a liability claim against Kelsey's policy. Cincinnati Insurance, then, cannot have breached its fiduciary duty to Perrin by allowing its medical payments adjuster and its liability adjuster to exchange information necessary for the processing of both the Medpay Claim and the Liability Claim.

{¶ 16} Yet, even assuming strictly for sake of analysis that the alleged information sharing did constitute a breach of fiduciary duty on the part of Cincinnati Insurance, Perrin could not have proven that she was thereby harmed. Perrin did not meet "all conditions precedent to [Cincinnati Insurance]'s duty to provide medical payments coverage," given that neither she nor her counsel "respond[ed] [to requests from the company's medical payments adjuster for] copies of [her] medical records [and] bills," and she did not allege in her complaint that Cincinnati Insurance refused to pay her Liability Claim in breach of its fiduciary duty to her. Decision Sustaining Motion for Summary Judgment 7; *see* Complaint ¶ 24-61; Appellant's Brief 2-3.

{¶ 17} Regardless, Perrin has not offered any argument directed to the trial court's decision of September 19, 2017, in which the court partly sustained Cincinnati Insurance's

motion for judgment on the pleadings and dismissed her causes of action for breach of fiduciary duty, and violation of R.C. Chapter 3904 and Ohio Adm.Code Chapter 3901. She has, therefore, effectively abandoned her challenge to that decision. Consequently, Perrin's challenge to the decision overruling her first motion to compel is moot as it relates to Counts 5 and 6 of the complaint.

{¶ 18} To the extent that the alleged sharing of information relates to Count 4 of the complaint, in which Perrin accused Cincinnati Insurance of breaching its duty of good faith and fair dealing, Perrin could establish a right to recovery only if she could show that Cincinnati Insurance " 'refus[ed] to pay [her Medpay] [C]laim [in] circumstances that [did not] furnish reasonable justification' " for the refusal. *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 554-555, 644 N.E.2d 397 (1994), quoting *Staff Builders, Inc. v. Armstrong*, 37 Ohio St.3d 298, 303, 525 N.E.2d 783 (1988). Cincinnati Insurance, however, never became legally obligated to pay the Medpay Claim because Perrin did not meet the conditions precedent. Perrin therefore could not prove that Cincinnati Insurance unreasonably refused to pay her Medpay Claim.

{¶ 19} Although Cincinnati Insurance passively waited "for Perrin or her attorney to provide the medical bills and records" that would have implicated its obligation to pay her Medpay Claim, after which it simply "closed the [Medpay Claim] file," the company's passivity was, at worst, poor customer service, rather than a breach of its duty of good faith and fair dealing. Decision Sustaining Motion for Summary Judgment 7. Notwithstanding that Pike Chiropractic provided some or all of the medical documentation Cincinnati Insurance had requested from Perrin, Cincinnati Insurance "cannot be held to [have] violate[d] its duties under [Perrin's] policy by rejecting the submission[s] from Pike

Chiropractic, [which were made pursuant to] an invalid assignment" of Perrin's contractual rights. *Id.* at 8. In addition, Perrin's counsel conceded at oral argument that his firm merely assumed, but did not verify, that Cincinnati Insurance had issued payment subsequent to its receipt of documents from Pike Chiropractic. Under these circumstances, Cincinnati Insurance did not refuse to pay Perrin's Medpay Claim in the absence of any reasonable justification.

{¶ 20} The second of the discovery rulings Perrin challenges is the trial court's entry of August 21, 2018, "regarding the scope of discovery permitted at the * * * depositions of [Cincinnati Insurance's] adjust[e]rs." Entry on Scope of Discovery at Depositions 1. On August 16, 2018, Perrin had filed a document entitled "Plaintiff's Memoranda [sic] on Scope of Discovery" in which she requested that the court enter an order declaring that she would be: (1) "permitted to ask questions of any person who may have knowledge relating to [her Medpay] [C]laim and [Cincinnati Insurance's corresponding] investigation"; (2) "entitled to ask questions regarding the [Medpay Claim] file produced in discovery"; (3) "permitted to ask questions regarding the motive, adequacy and extent of [the] investigation conducted by [Cincinnati Insurance] related to [her Medpay] [C]laim"; (4) "entitled to ask * * * whether the [persons] investigating [her Medpay] [C]laim communicated [with] anyone handling [her L]iability [C]laim"; and (5) "permitted to ask * * * whether anyone adjusting or investigati[ng] the * * * [Medpay] [C]laim accessed" the Liability Claim file. Plaintiff's Memorandum on the Scope of Discovery 5. Perrin also requested that Cincinnati Insurance not be permitted to invoke "work product privilege [in response to] questions focus[ed] on [its] conduct prior to the filing of [her] [c]omplaint on May 1, 2017." In its entry, the court "agree[d] that the first

three [of these items were] within the scope of discovery [under] Civ.R. 26(B)," but it limited the scope of inquiry regarding the fourth and fifth items "to [that] information [which] the [Medpay] adjust[e]rs received [or] reviewed." Entry on Scope of Discovery at Depositions 1-2. As well, the court noted that the work product privilege did "not appear to apply because [any information that the] adjust[e]rs received and reviewed in handling the [Medpay] [C]laim [could not] be considered to have been [received] in anticipation of litigation." *Id.* at 2.

{¶ 21} In her brief, Perrin argues that the trial court abused its discretion by "prevent[ing] [her] from asking any questions about [the] information [that Cincinnati Insurance's medical payments adjuster or] claim supervisors [might have] provided to [the company's] liability adjuster" because the evidence she sought "directly relates to the subject matter of [her] bad faith claim" and to her claim "for punitive damages." Appellant's Brief 12. Given, however, that Cincinnati Insurance never became legally obligated to pay Perrin's Medpay Claim, Perrin could not have proven that the company breached its duty of good faith by " 'refus[ing] to pay the claim [in] circumstances that [did not] furnish reasonable justification' " for the refusal. *Zoppo*, 71 Ohio St.3d at 554-555, 644 N.E.2d 397, quoting *Staff Builders, Inc.*, 37 Ohio St.3d at 303, 525 N.E.2d 783.

{¶ 22} The third of the discovery rulings Perrin challenges is the trial court's decision of March 12, 2019, in which the court overruled her second motion to compel. In the motion, Perrin asked the court for an order directing Cincinnati Insurance to respond to her second set of requests for production of documents, which she had propounded to address "issues that were raised during the depositions" of the Cincinnati Insurance personnel who were associated with the handling of her claims. Plaintiff's Second

Motion to Compel 1. The court overruled the motion because it found Perrin's second set of requests for production were "overly broad and seeking material not relevant to the subject matter of [her] remaining" causes of action.[7] Decision Overruling Plaintiff's Second Motion to Compel 1. *Id.* Here, Perrin argues that the trial court abused its discretion by overruling the motion because her requests "were specific and tailored[,] and even included citations to deposition pages where the material requested was discussed by [Cincinnati Insurance's] adjusters." Appellant's Brief 13.

{¶ 23} Perrin's argument lacks merit. Her second motion to compel presented 10 requests for production of documents and two requests for inspection. Of her 10 requests for production, only two concerned Perrin's Medpay Claim, whereas the other eight requests were directed to documents that pertained to the handling of medpay claims in general, such as "any form letter(s) and/or documents related to medpay claims, including but not limited to [letters] requesting authorizations from an insured to obtain medical records/bills." *See* Plaintiff's Second Motion to Compel, Ex. 2. In her requests for inspection, Perrin asked for access to a computer that would permit her to view Cincinnati Insurance's file on her Medpay Claim, and more generally, to access the

---

[7] The court also faulted Perrin for omitting "an appropriate description of efforts [she undertook] to resolve" the dispute short of filing her motion to compel. Decision Overruling Plaintiff's Second Motion to Compel 1. Perrin rejects the court's assertion as "inaccurate" because she "attached * * * email correspondence [demonstrating that she] tried to [obtain] responses without filing a motion," but the two exhibits to which she refers provide no indication of any effort to resolve the dispute. *See* Plaintiff's Second Motion to Compel, Exs. 1 and 3. The first of the exhibits is a copy of the email message in which Perrin's counsel initially submitted the requests, a simple transmittal letter consisting of a single sentence, and the second of the exhibits is a copy of an email message in which counsel noted that Cincinnati Insurance's response was two days overdue and asked when the responses could be expected. *Id.*

company's "internal website." *Id.* The former request was redundant, inasmuch as Cincinnati Insurance had already discovered its file on the Medpay Claim, and the latter request was not tailored to any specific information, let alone to information relevant specifically to the claim itself.

{¶ 24} Although two of Perrin's requests for production—the third and the fifth— were directed to documents of nominal relevance, the only "issues remaining [to be adjudicated at that point] in [the] case" were "whether [Cincinnati Insurance] breached" Perrin's policy by refusing to pay her Medpay Claim, "and, if so, whether [Cincinnati Insurance] lacked any reasonable basis" for refusing to pay. Decision Overruling Plaintiff's Second Motion to Compel 1. Yet, as we have noted, Perrin could not have proven that Cincinnati Insurance unreasonably refused to pay her Medpay Claim because she failed to satisfy the conditions precedent to the company's obligation to remit payment. Thus, even if the trial court arguably should have instructed Cincinnati Insurance to respond to Perrin's third and fifth requests for production, any such error was harmless.

{¶ 25} Finally, we reject Perrin's proposition that, consistent with our holding in *Unklesbay*, 167 Ohio App.3d 408, 2006-Ohio-2630, 855 N.E.2d 516, we should hold that a trial court abuses its discretion by overruling a motion to compel discovery of potentially privileged documents without conducting an in camera review. This proposition would, if adopted, require that a trial court conduct an in camera inspection of potentially privileged documents in response to nearly every motion to compel, regardless of whether the documents being requested were relevant to any viable cause of action.

{¶ 26} For all of the foregoing reasons, we hold that the trial court did not abuse its

discretion by overruling Perrin's first and second motions to compel in its decisions of June 6, 2018, and March 12, 2019, or by limiting the scope of depositions in its decision of August 21, 2018.   Perrin's first assignment of error is overruled.

{¶ 27} For her second assignment of error, Perrin contends that:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT[,] THE CINCINNATI INSURANCE COMPANY[,] ON PLAINTIFF'S CLAIMS OF BREACH OF CONTRACT AND BREACH OF ITS DUTY OF GOOD-FAITH [sic] AND FAIR DEALINGS [sic] WHEN THE TRIAL COURT FOUND THAT PLAINTIFF DID NOT MEET A CONDITION PRECEDENT FOR A CONDITION [sic] THAT WAS NOT WRITTEN IN THE INSURANCE POLICY.

{¶ 28} Perrin makes two arguments in this assignment of error.   First, she argues that the trial court erred by "finding that [she] failed to meet a condition precedent" to Cincinnati Insurance's obligation to remit payment in satisfaction of her Medpay Claim. *See* Appellant's Brief 15.   Second, she argues that the court erred by sustaining Cincinnati Insurance's motion for summary judgment because the court incorrectly treated her cause of action for bad faith as derivative of her cause of action for breach of contract.   *See id.*

{¶ 29} Under Civ.R. 56, summary judgment is proper only where: (1) a case presents no genuine dispute as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion, which is adverse to

the non-moving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); *Dalzell v. Rudy Mosketti, L.L.C.*, 2d Dist. Clark No. 2015-CA-93, 2016-Ohio-3197, ¶ 5, citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The substantive law of the claim or claims being litigated determines whether a fact is "material." *Herres v. Millwood Homeowners Assn., Inc.*, 2d Dist. Montgomery No. 23552, 2010-Ohio-3533, ¶ 21, citing *Hoyt, Inc. v. Gordon & Assocs., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

{¶ 30} Initially, the movant bears the burden of establishing the absence of any genuine dispute of material fact. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). The movant may rely only on evidence of the kinds listed in Civ.R. 56(C) for this purpose. *Dalzell* at ¶ 5, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant meets its burden, then the non-moving party bears a reciprocal burden to establish, as set forth in Civ.R. 56(E), that the case presents one or more genuine issues of fact to be tried. *Id.* at ¶ 6. The non-moving party, in satisfying this requirement, may not rely merely upon the allegations or denials offered in the pleadings, but like the movant, "must be able to point to evidentiary materials of the type[s] listed in Civ.R. 56(C)." *Dresher* at 293, quoting Civ.R. 56(E); *Dalzell* at ¶ 6. On appeal, a trial court's ruling on a motion for summary judgment is reviewed de novo. *Dalzell* at ¶ 6, citing *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42.

{¶ 31} Perrin argues, first, that the trial court erred by finding that she failed to meet the conditions precedent to Cincinnati Insurance's obligation to remit payment for her Medpay Claim because neither she nor her counsel respond[ed] [to requests from the company's medical payments adjuster for] copies of [her] medical records [and] bills," or

alternatively, for an authorization allowing Cincinnati Insurance to obtain these records itself. Appellant's Brief 15; Decision Sustaining Motion for Summary Judgment 7. Attempting to refute the court's finding, Perrin maintains that she "never refused to provide authorizations [sic]," and she blames Cincinnati Insurance for not "sending any authorizations [sic] [for her] to execute." Appellant's Brief 15.

{¶ 32} This argument has no merit. Cincinnati Insurance might have been remiss for failing to send an authorization form for Perrin to execute, but Perrin nevertheless did not provide the records requested by the company's medical payments adjuster. Furthermore, Perrin or her counsel could have asked Cincinnati Insurance to send an authorization form for her signature, or at minimum, notified the company that she had not received an authorization form. As well, Perrin's counsel could have drafted a letter for her signature in which she granted Cincinnati Insurance permission to obtain the records it required. The trial court, in any event, did not err by finding that Perrin neither provided the requested records, nor authorized Cincinnati Insurance to obtain them.

{¶ 33} Perrin argues, second, that her cause of action "for bad faith is * * * separate and independent [from her cause of action for] breach of contract," rather than being a derivative cause of action. Appellant's Brief 15. As we noted in our review of Perrin's first assignment of error, however, Perrin could have proven that Cincinnati Insurance breached its duty of good faith only by showing that the company refused to pay her Medpay Claim in " 'circumstances that [did not] furnish reasonable justification' " for the refusal. *Zoppo*, 71 Ohio St.3d at 554-555, 644 N.E.2d 397, quoting *Staff Builders, Inc.*, 37 Ohio St.3d at 303, 525 N.E.2d 783. Because Perrin did not provide the records requested by Cincinnati Insurance, or authorize the company to procure those records

for itself, she failed to meet the conditions precedent to the company's obligation to issue payment on her Medpay Claim. We hold, as a result, that the trial court did not err by determining that Cincinnati Insurance did not refuse to perform its contractual obligations without reasonable justification, meaning that the court did not err by sustaining the company's motion for summary judgment. Perrin's second assignment of error is overruled.

### III. Conclusion

**{¶ 34}** We hold that the trial court did not abuse its discretion by overruling Perrin's motions to compel in its decisions of June 6, 2018, and March 12, 2019, or by limiting the scope of depositions in its decision of August 21, 2018. In addition, we hold that the trial court did not err by sustaining Cincinnati Insurance's motion for summary judgment in its decision of April 19, 2019. Therefore, the trial court's final judgment in this matter, entered effectively on July 23, 2019, is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Ryan J. Melewski
Jeffrey A. Pallante
Brian R. McHenry
Gerald V. Southard
Christopher Johnson
Jennifer Myers
Hon. Richard Skelton